IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–00644–WYD–KMT

WYATT T. HANDY, JR.,

     Plaintiff,

v.

ELAINE MEYER, individual and official capacity,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This matter is before the court on "Defendant Meyer's Motion to Dismiss" (Doc. No. 34, filed July 26, 2011 [Mot. Dismiss]), as well as Plaintiff's "Motion for Leave to File an Amended Complaint" (Doc. No. 37, filed Aug. 15, 2011 [Mot. Amend]).  For the following reasons, the court recommends that Defendant Meyer's Motion to Dismiss be granted, and Plaintiff's Motion to Amend be denied.

## FACTUAL BACKGROUND

     The following factual background is derived from Plaintiff's Prisoner Complaint (Doc. No. 1, filed Mar. 15, 2011) and the parties' briefing with respect to this Recommendation.  In this case, Plaintiff alleges that Defendant Meyer violated his federal and state law rights by denying and delaying treatment for keratoconus, a medical condition affecting his right eye.

     In March 2003, Plaintiff was diagnosed with keratoconus, which is "a degenerative disorder of the eye in which structure changes within the cornea cause it to thin and change to a

more conical shape that its normal gradual curve." (Compl. at 4.)  In 2007, Plaintiff was told that he is legally blind in his right eye.  (*Id.*)

Plaintiff was booked into the Denver County Jail (DCJ) on February 12, 2010.  (*Id.*)  On April 1, 2010, while at the DCJ, Plaintiff was referred to see an ophthalmologist for his keratoconus.  (*Id.* at 4, Ex. 11.)  4 days later, on April 5, 2010, Plaintiff was examined by former defendant Dr. Fish with Denver Health Medical Center, who determined that Plaintiff should receive a corneal transplant, and therefore recommended that DCJ staff schedule Plaintiff for surgery.  (*Id.*)

On May 12, 2010, Plaintiff was released from the DCJ into the custody of the Arapahoe County Sheriff's Department and was booked into the Arapahoe County Detention Facility (ACDF).  (*Id.*)  Upon being booked into ACDF, Plaintiff informed the booking nurse that he was taking 500 mg of Naproxen for headaches caused by his keratoconus; however, the booking nurse denied him this medication.  (*Id.* at 4-5.)  When Plaintiff filed a grievance to complain about this denial, Defendant Meyer responded that ACDF medical put in an inquiry to the DCJ and DCJ staff responded that they did not have any record that Plaintiff was taking medication. (*Id.* at 5, Ex. 12.)  Therefore, Defendant Meyer informed Plaintiff that if he wanted medical treatment he would have to contact the ACDF medical department.  (*Id.*)

Plaintiff submitted requests to the ACDF medical department on May 16 and 23, 2010 to see a doctor regarding his keratoconus.  (*Id.*)  In response to his May 23 inquiry, Plaintiff was informed that he was placed on the list to see the doctor.  (*Id.* at 5, Ex. 14.)

On June 5, 2010, Plaintiff filed his first grievance against the ACDF medical department stating that he was experiencing migraine headaches and that his eyesight was worsening.  (*Id.* at

5.)  Defendant Meyer responded to this grievance on June 7, 2010 by informing Plaintiff that the ACDF doctor[1] had ordered a consultation for Plaintiff through Denver Health Medical Center and that Plaintiff would be brought to Denver Health "when they tell us to."  (*Id.* at 5, Ex. 15.)

Plaintiff submitted two more medical requests on June 15, 2010 and June 30, 2010.  (*Id.* at 6, Ex. 16, 17.)  The response to each of these grievances was to again inform Plaintiff that he was scheduled to be seen at the Denver Health eye clinic.  (*Id.*)  On July 7, 2010, former defendant Dr. Cohen sent a memorandum to Plaintiff stating that Dr. Cohen had spoken with Plaintiff's opthalmologist and learned that the cornea surgery was not emergent and could be done at Plaintiff's convenience.  (*Id.* at 6, Ex. 18.)  Although it is not entirely clear from Plaintiff's Complaint,[2] at some point in June or July 2010, Plaintiff was seen by an "eye specialist at Denver Health."  (*Id.*, Ex. 20, 22.)

In November 2010, Plaintiff alleges that his keratoconus had advanced and that, as a consequence, his eyesight in both eyes deteriorated rapidly and his eye constantly itched and hurt.  (*Id.* at 6.)  Consequently, on November 17, 2010, Plaintiff filed another grievance.  (*Id.* at 6-7, Ex. 19.)  Defendant Meyer responded to Plaintiff that he was scheduled to see the optometrist at the next available appointment.[3]  (*Id.*)

---

[1] The court assumes, without deciding, that this doctor is former defendant Dr. Cohen.

[2] Plaintiff does not specifically allege that he was seen by an eye specialist at Denver Health in June or July 2010.  However, in Exhibit 20 attached to his Complaint, he admits that he was seen at Denver Health in June 2010.  *Pace v. Swerdlow,* 519 F.3d 1067, 1072-73 (10th Cir. 2008) (on a motion to dismiss for failure to state a claim, district court can consider exhibits attached to the complaint alongside all materials in the complaint).

[3] Plaintiff filed a similar grievance on November 20, 2010, which Defendant Meyer responded to by stating that she already responded to Plaintiff's grievance on November 19,

On December 18, 2010, Plaintiff submitted another medical request to Dr. Cohen outlining the symptoms he was experiencing and expressing his concern over the delays in treating his keratoconus.  (*Id.* at 7, Ex. 22.)  Dr. Cohen informed Plaintiff again that he was on the list for surgery at Denver Health.  Dr. Cohen also informed Plaintiff that he personally spoke with Dr. Fish, who informed him that Plaintiff's condition was not an emergency, and that while Plaintiff was on the list, it can take a long time for such a surgery to be scheduled and completed. (*Id.*)

On December 26, 2010, Plaintiff filed another grievance against Defendants Meyers and Dr. Cohen relating to his symptoms and the delay in his treatment.  (*Id.* at 7, Ex. 23.)  Defendant Meyer responded to Plaintiff by stating that she spoke to Dr. Cohen about Plaintiff's concerns and, even though Plaintiff was on the "waiting list" at Denver Health, Dr. Cohen ordered an ophthalmology consult for Plaintiff with Denver Health "to be safe."  (*Id.* at Ex. 23.)  Because Defendant Meyer did not "know when Denver Health would schedule [Plaintiff's consult]," she informed Plaintiff that "we will get you there when they say."  (*Id.* at 7, Ex. 23.)[4]

On January 15, 2011, Plaintiff submitted another medical request complaining that his eyes continued to hurt, that he was feeling a burning pain.  (*Id.* at 8, Ex. 25.)  Dr. Cohen responded to Plaintiff stating "you have an appointment <u>VERY</u> soon.  I just checked."  (*Id.,* Ex. 25.)

---

2010.  (Mot. at 7, Ex. 20.)

[4] Plaintiff filed his "second and final step grievance" against Defendant Meyer and Dr. Cohen on December 30, 2010.  (Compl. at 8, Ex. 24.)  ACDF Lieutenant Crecelius responded to Plaintiff that "the medical staff is addressing your medical issues along with the staff from Denver Health." (*Id.,* Ex. 24.)

On January 24, 2011, Plaintiff was transported to Denver Health to see an ophthalmologist.  (*Id.* at 8.)  Plaintiff was informed that Dr. Fish no longer worked for Denver Health.  (*Id.*)  The new ophthalmologist informed Plaintiff that he felt that Dr. Fish's recommendation that Plaintiff' receive a corneal transplant was not appropriate, and recommended that Plaintiff's keratoconus be treated with "piggy back" contact lenses instead.[5] (*Id.*)  The ophthalmologist also allegedly informed Plaintiff that his keratoconus had progressively worsened in the prior year.  (*Id.*)  Plaintiff also maintains that the ophthalmologist told him that the delay in his medical treatment was the fault of the ACDF medical staff because it is ACDF's responsibility to schedule his appointments.  (*Id.*)

Shortly after Plaintiff's ophthalmology consultation at Denver Health, Plaintiff submitted a number requests and grievances to obtain an appointment at Denver Health to be fitted for contact lenses.  (*Id.* at 8-9, Ex. 26-30.)  On February 10, 2011, Defendant Meyer informed Plaintiff that he was "already scheduled to go to the Denver Health Eye Clinic this month" and that he would be brought to Denver Health at the time and date of that appointment.  (*Id.*, Ex. 30.)

Plaintiff was taken back to Denver Health on February 15, 2011[6] to be fitted for his piggy-back lenses.  (*Id.* at 10.)  After he was fitted the Denver Health doctor informed Plaintiff that his contact lenses would be sent to the ACDF Medical Department.  (*Id.*)

---

[5] A piggyback lens combination is where a patient wears a semi-permeable rigid lens over soft lenses.  (Compl. at 10; *see also id.* Ex. 5.)

[6] Although Plaintiff's Complaint alleges that this appointment took place on February 15, 2010, it is clear to the court that this is a typographical error and that, in light of the progression of events outlined in his Complaint, the appointment in fact took place on February 15, 2011.

Plaintiff received his lenses on March 1, 2011;[7] however, Plaintiff notice that there was a "spot" embedded into the right "rigid" lense.  (*Id.*)  Additionally, Plaintiff had not been instructed on how to wear the "piggyback" lens combination.  (*Id.*)  Accordingly, Plaintiff submitted another medical request and grievance on March 3 and 8, 2011, respectively, requesting that his rigid contact lenses be re-ordered and that he be scheduled for another appointment to be trained on how to wear his lenses.  (*Id.* at 10, Ex. 33-34.)

On March 9, 2011, Plaintiff was seen by a new doctor at ACDF because Defendant Cohen was no longer employed by the ACDF.  (*Id.* at 11.)  That doctor called Doctor Williams at Denver Health who explained to Plaintiff how to use the piggyback lens combination.  (*Id.*)

Altogether, Plaintiff alleges that the delay in treating his keratoconus caused him substantial harm, including "loss of vision"  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff initiated this suit by filing his Complaint on March 15, 2011.  Plaintiff's Complaint alleges a claim pursuant to 42 U.S.C. § 1983 that his Fourteenth Amendment rights were violated, a claim pursuant to the Americans with Disabilities Act (ADA), and several state-law claims against Defendant Meyer, as well as former defendants Drs. Cohen and Fish.[8] (Compl. at 12-18.)

Defendant Meyer filed her Motion to Dismiss on July 26, 2011.  Plaintiff responded to

---

[7] Again, although Plaintiff's Complaint alleges that he received his contact lenses on March 1, <u>2010</u>, this is clearly a typographical error, and that, in light of the progression of events outlined in his Complaint, the appointment in fact took place on March 1, 2011.

[8] Plaintiff's claims against former defendants Drs. Cohen and Fish were dismissed from this case without prejudice after Plaintiff failed to show good cause for his failure to serve them pursuant to Fed. R. Civ. P. 4(m).  (Doc. No. 47, filed Dec. 21, 2011.)

Defendant Meyer's Motion to Dismiss on August 15, 2011 (Doc. No. 38 [Resp. Mot. Dismiss])

and Defendant Meyer filed her reply in support of her Motion to Dismiss on August 25, 2011

(Doc. No. 41 [Reply Mot. Dismiss]).

The same day that he filed his Response to the Motion to Dismiss, Plaintiff filed his

Motion to Amend. Defendant Meyer responded to Plaintiff's Motion to Amend on August 26,

2011. Pursuant to D.C.COLO.LCivR 7.1C and Fed. R. Civ. P. 6(d), Plaintiff had until

September 12, 2011 to file his reply. However, no reply was filed by, or at any time after, that

date. Accordingly, the parties' respective motions are ripe for the court's review and

recommendation.

## LEGAL STANDARDS

### A.      Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted). A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see*

*also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply

additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the

8

allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at

1950.

Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998). "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citation omitted). "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949

(citation omitted).

### C.     Leave to Amend Pleadings

Pursuant to Fed. R. Civ. P. 15(a), "[t]he court should freely give leave [to amend

the pleadings] when justice so requires." *See also York v. Cherry Creek Sch. Dist. No. 5,* 232

F.R.D. 648, 649 (D. Colo. 2005); *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley

Hosp. Dist.,* 353 F.3d 832, 842 (10th Cir. 2003). The Supreme Court has explained the

circumstances under which denial of leave to amend is appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits. In the absence of any apparent or declared reason-such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the opposing

> party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Triplett v. LeFlore County, Okl.*, 712 F.2d 444, 446 (10th Cir.1983).   Further, the Supreme Court guides that

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson,* 355 U.S. 41, 48 (1957).

## ANALYSIS

### I.   *DEFENDANT MEYER'S MOTION TO DISMISS*

First, the court addresses Defendant Meyer's Motion to Dismiss.  Defendant Meyer argues that Plaintiff's claim pursuant to 42 U.S.C. § 1983 fails to state a claim that his Fourteenth Amendment rights were violated, his ADA claim fails to state a claim for relief, and that his state law claims should be dismissed for lack of subject-matter jurisdiction.  (*See* Mot. Dismiss.)  The court addresses these arguments in turn below.

### A.   *42 U.S.C. § 1983 – Fourteenth Amendment Claim*

Defendant Meyer argues that Plaintiff's allegations are insufficient to amount to deliberate indifference to serious medical needs under the Eighth Amendment, which applies by analogy to Plaintiff's Fourteenth Amendment claim.  (Mot. Dismiss 4-6, 8.)  The court agrees and finds that Plaintiff fails to state a claim for relief against Defendant Meyer in either her individual or official capacity.

### 1.    *Individual Capacity*

Plaintiff was a pretrial detainee at the time his claims arose.  (Compl. at 3.)  In cases involving the right to custodial medical care, "'pretrial detainees are protected under the [Fourteenth Amendment's] Due Process Clause rather than the Eighth Amendment.'"  *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1315 (10th Cir. 2002) (citations and internal quotation marks omitted).   Nevertheless, the court "applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983."  *Id.*

A plaintiff states a cognizable Eighth Amendment claim for denial of medical attention if he "allege[s] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  A "deliberate indifference" claim involves both an objective and a subjective component.  *Sealock v. Colo.,* 218 F.3d 1205, 1209 (10th Cir. 2000).  To satisfy the objective prong, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious."  *Farmer* v. Brennan, 511 U.S. 825, 834 (1994) (citation and quotation marks omitted).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind."  *Farmer,* 511 U.S. at 834.  The officials must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

11

While an Eighth Amendment violation can occur where medical care is unnecessarily delayed, *Sealock,* 218 F.3d at 1210, Plaintiff must show that the "delay resulted in substantial harm", *id.,* and resulted in "the unnecessary and wanton infliction of pain," *Estelle,* 429 U.S. at 104.  Thus, a delay in treatment that is unintentional, or even negligent, however serious the harm, does not violate the Constitution.  *Compare Estelle,* 429 U.S. at 104-05 (deliberate indifference "is manifested . . . by prison guards in *intentionally* denying or delaying access to medical care) (emphasis added), *with Hood v. Prisoner Health Servs., Inc.,* 180 F. App'x 21, 25 (10th Cir. 2006) ("*inadvertent* or *negligent* failure to provide medical care, however serious the consequences does not rise to deliberate indifference to serious medical needs.") (emphasis added).

Although Plaintiff maintains that Defendant Meyer delayed Plaintiff's medical treatment for ten months, the exhibits attached to his Complaint contradict that conclusion, and instead suggest Defendant Meyer's involvement in three much shorter delays.  First, on June 8, 2010—less than a month after Plaintiff's May 12, 2010 arrival at ACDF—Defendant Meyer informed Plaintiff that a consultation at Denver Health had been ordered for Plaintiff.  (Compl. at 5, Ex. 15.)  Plaintiff was subsequently seen by an eye specialist at Denver Health sometime in June or July 2010 (*Id.,* Ex. 20, 22), and that eye specialist informed Dr. Cohen that surgery was not emergent and could be done at Plaintiff's convenience.  Plaintiff did not file any more medical requests or grievances until November 2010.  (*Id.,* Ex. 19.)  Thus, between Plaintiff's arrival at ACDF on May 12, 2010 and when he was seen at Denver Health in June or July 2010, there was an arguable delay of medical treatment of approximately one-and-a-half months.

The second arguable delay began around November 17, 2010, when Plaintiff complained

that his keratoconus was advancing and was causing headaches and his eyesight to deteriorate. (*Id.,* Ex. 19.)  Defendant Meyer responded on several occasions in November and December of 2010 that Plaintiff was scheduled to see the optometrist or ophthalmologist at Denver Health at the next available appointment.  (*See, e.g., id.*, Ex. 19, 25.)  However, Plaintiff was not seen at Denver Health until January 24, 2011.  (*Id.,* Ex. 26.)  Accordingly, on this second occasion, Plaintiff's medical treatment for his keratoconus was arguably delayed for just over two months.

Finally, the third arguable delay occurred after Plaintiff was seen at Denver Health on January 24, 2011, when his new ophthalmologist decided to treat Plaintiff's keratoconus with a piggyback lens combination.  (*Id.* at 8.)  Immediately after his appointment, Plaintiff submitted medical requests and grievances to be fitted for his contact lenses.  Plaintiff was ultimately taken to Denver Health on February 15, 2011.  Thus, on this third and final occasion, Plaintiff's medical treatment was arguably delayed for 20 days.

Having clarified the alleged delays in Plaintiff's medical treatment, the court finds that Plaintiff's allegations fail to establish that Defendant Meyer acted with the requisite culpable mind state.  As to each purported delay, Defendant Meyer responded within a matter of days to Plaintiff's medical requests and grievances.  (*See id.,* Ex. 12, 19-20, 30.)  Moreover, on each occasion, Plaintiff either had a preexisting appointment scheduled with Denver Health or one was ordered for him a short time after his initial medical requests and grievances.  (*Id.,* Ex. 14-15, 19, 28, 30; *see also id.,* Ex. 23.)

Arguably, there were some delays between the dates those consultations were initially ordered and the time that Plaintiff was actually seen at Denver Health.  However according to Plaintiff's Complaint, at very best, that delay was the result of a negligent misunderstanding as

13

to who was responsible—the ACDF medical staff or Denver Health—for scheduling Plaintiff's appointments.  (*Compare id.* Ex.15, 23, 26, 30 *with id.* at 8, Ex. 26, 28.)  Nothing suggests that Defendant Meyer intentionally or wantonly delayed treatment for Plaintiff's keratoconus.  In fact, on at least one occasion, Defendant Meyer acknowledged the delay and took affirmative steps to have Plaintiff seen by the Denver Health Eye Clinic to address Plaintiff's symptoms. (*Id.,*  Ex. 23.)

Furthermore, the court finds that Defendant Meyer's culpability in these delays, if any, is mitigated by the fact that the ACDF medical staff was twice advised by Plaintiff's consulting physicians at Denver Health that Plaintiff's keratoconus was "not emergent" and could be addressed at Plaintiff's "convenience."  (*Id.,* Ex. 18, 22.)  In light of that assessment of Plaintiff's medical needs, Defendant had no reason to believe that the short delays in Plaintiff's treatment would cause serious harm.  To the extent that Plaintiff disagrees with that assessment, the court notes that a simple difference of opinion between an inmate and his treating physician as to a diagnosis or treatment does not support a claim of cruel and unusual punishment.  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

Altogether, the court finds that Plaintiff has failed to sufficiently allege that Defendant Meyer acted with deliberate indifference to his serious medical needs, and that therefore Plaintiff fails to state a claim for a violation of his Fourteenth Amendment Due Process rights. Accordingly, the court finds that Plaintiff's Section 1983 claim against Defendant Meyer in her individual capacity is properly dismissed.

### 2.    *Official Capacity Claim*

Defendant Meyer also argues that Plaintiff fails to sufficiently allege Section 1983 claim

against Defendant Meyer's in her official capacity.  (Mot. Dismiss at 8.)  Again, the court agrees.

A claim against a government official or employee in her official capacity is effectively the same as a claim against the government entity that employs that person.  *Pietrowski v. Town of Dibble,* 134 F.3d 1006, 1009 (10th Cir. 1998) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)).  Thus, here, by naming Defendant Meyer in her official capacity, Plaintiff effectively names the Arapahoe County Sheriff's Department and/or Arapahoe County as defendants.

Municipalities, like Arapahoe County, may be held liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom.  *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978).  The plaintiff must be able to demonstrate that the "municipality was the 'moving force' behind the injury alleged."  *Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997).  However, a municipality cannot be liable under § 1983 without a predicate constitutional harm inflicted by an officer.  *Jiron v. City of Lakewood,* 392 F.3d 410, 419 (10th Cir. 2004) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)); *see also Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317–18 (10th Cir. 2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers").

As discussed above, Plaintiff has failed to establish that Defendant Meyer violated Plaintiff's constitutional rights.  Accordingly, because there is no predicate constitutional harm by a municipal official, no liability can attach to Arapahoe County or the Arapahoe County Sheriff's Department.  Therefore, the court finds that Plaintiff's Section 1983 claim against Defendant Meyer in her official capacity is properly dismissed.

### B.    ADA Claim

Defendant Meyer argues that Plaintiff's ADA claim should also be dismissed for failure to state a claim.  As part of his ADA claim, Plaintiff appears to allege violations of both Title II and III of the ADA.  (Compl. at 14.)  The court agrees with Defendant Meyer that Plaintiff fails to sufficiently allege a claim under Title II of the ADA.  The court also finds that to the extent that Plaintiff alleges a violation of Title III of the ADA, his claim is moot.

### 1.    Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  However, "the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."  *Rashad v. Doughty*, 4 Fed. App'x 558, 560 (10th Cir. 2001) (citing *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996)).  Here, Plaintiff plainly seeks to premise an ADA violation on Defendant Meyer's actions of "intentionally denying or delaying medical treatment for the Plaintiff . . . in deliberate indifference to his serious medical needs." (Compl. at 14.)  Without more, these allegations cannot sustain a claim premised on a violation of Title II of the ADA.  Accordingly, for the reasons outlined above, the court finds that Plaintiff's ADA claim is properly dismissed.

### 2.    Title III of the ADA

The existence of a live case or controversy is a constitutional predicate to federal court jurisdiction, and must exist at all stages of the litigation.  *McClendon v. City of Albuquerque,* 100

F.3d 863, 867 (10th Cir. 1996).  While Title III of the ADA prohibits discrimination against

persons with disabilities in places of public accommodation, 42 U.S.C. § 12182(a), a Title III

plaintiff's sole remedy is injunctive relief, *Chambers v. Melmed,* 141 F. App'x 718, 720 (10th

Cir 2005) (citing 42 U.S.C. § 12188(a)).  *See also Lewis v. Burger King,* 361 F. App'x 937 n.1

(10th Cir. 2010) (citing *Powell v. Nat'l Bd. of Med Exam'rs,* 364 F.3d 79, 86 (2d Cir. 2004)).

"When a party seeks only equitable relief, [] past exposure to alleged illegal conduct does not

establish a present live controversy if unaccompanied by any continuing present effects."

*McClendon*, 100 F.3d at 867 (10th Cir. 1996) (citing *Beattie v. United States,* 949 F.2d 1092,

1094 (10th Cir. 1991)).

Here, Plaintiff is no longer housed at ACDF.  (*See* Doc. No. 43, filed Sep. 22, 2011.)

Because Plaintiff may only seek equitable injunctive relief under Title III, the fact that he is no

longer at ACDF renders his Title III claim moot.  *Green v. Branson,* 108 F.3d 1296, 1300 (10th

Cir. 1997) (prisoner's transfer mooted his claim for declaratory and injunctive relief as a

judgment in the prisoner's favor "would amount to nothing more than a declaration that he was

wronged, and would have no effect on the defendants' behavior towards him") Accordingly, the

court finds that Plaintiff's ADA claim is properly dismissed to the extent that it seeks to establish

liability under Title III of the ADA.

### C.    *State Law Claims*

Finally, Defendant Meyer argues that the court lacks subject matter jurisdiction over

Plaintiff's state-law claims because all of Plaintiff's federal law claims have been dismissed.

However, because this argument would be moot if Plaintiff has set forth any viable federal law

claims in his proposed amended Prisoner Complaint (Doc. No. 37-1 [Am. Compl.]), the court

defers consideration of this argument until later in this Recommendation, after it has considered Plaintiff's Motion to Amend.

## II.     PLAINTIFF'S MOTION TO AMEND

Plaintiff's Motion to Amend seeks to add Arapahoe County, the Arapahoe County Sheriff's Office, and Sheriff Grayson Robinson[9] as defendants.  (Mot. Amend; Am. Compl.) Plaintiff also seeks to add additional claims for relief—including twelve new federal law claims, and six new state law claims.  (*Id.*)  Finally, Plaintiff seek to add a claim for exemplary damages pursuant to his state law claims.  (Mot. Amend at 2.)

Defendant Meyer's argues that Plaintiff's Motion to Amend should be denied because Plaintiff's proposed claims are either (1) not actual legal claims, (2) redundant of the claims set forth in Plaintiff's original Complaint, or (3) are conclusory and therefore insufficient to state a claim for relief.  Therefore, Defendant Meyer argues that Plaintiff's proposed Amended Complaint should be rejected as futile.

"Although Fed.R.Civ.P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. No. R–1 v. Moody's Investor Servs, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999); The court addresses the sufficiency of Plaintiff's proposed claims, as well as Plaintiff's inclusion of Drs. Fish and Cohen and Sheriff Robinson as defendants, in turn below.

---

[9] Plaintiff's Motion to Amend itself does not mention Sheriff Robinson.  (*See* Mot. Am.) However, a brief review of Plaintiff's proposed Amended Complaint makes it clear that Plaintiff seeks to add Sheriff Robinson as a defendant.  (*See* Am. Compl.)

### A.    *Proposed Defendants Fish, Cohen, and Robinson*

As noted above, Drs. Fish and Cohen were dismissed from this case because Plaintiff failed to show good cause for his failure to serve them pursuant to Fed. R. Civ. P. 4(m).  (Doc. No. 47, filed Dec 21, 2011.)  Plaintiff's proposed Amended Complaint again features claims against Drs. Fish and Cohen.  However, despite being filed after the United States Marshal Service demonstrated that it was unable to locate Drs. Fish and Cohen (Doc. Nos. 28 & 29, filed July 11, 2011), Plaintiff's Motion to Amend does not provide any bases upon which to believe that he will now be able to properly serve Drs. Fish and Cohen.  Accordingly, the court finds that Plaintiff's Motion to Amend is properly denied as futile to the extent that it seeks to reassert claims against former defendants Fish and Cohen.

As to Sheriff Robinson, Plaintiff's proposed Amended Complaint does not contain *any* factual allegations as to how Sheriff Robinson was involved in the alleged violation of Plaintiff's rights.  (*See* Am. Compl.)  Rather, Plaintiff has simply included Sheriff Robinson in a number of his claims for relief, all of which are alleged in a conclusory fashion.  (*See id.* at 14-16, 20-25.)  Based on this lack of factual allegations against Sheriff Robinson, the court finds that Plaintiff's Motion to Amend is properly denied to the extent it seeks to add Sheriff Robinson as a defendant.  *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (to state a claim in federal court, a complaint must explain what each defendant did to harm the plaintiff, when the defendant did it, how the defendant's actions harmed him, and what specific legal right the plaintiff alleges the defendant violated).

### B.    *Proposed Claim One*

Plaintiff proposed Claim One merely states that "Plaintiff claims damages for injuries set

forth above under 42 U.S.C. § 1983 against [Defendants] for violation of his constitutional rights." (Am. Compl. at 14.) Defendant Meyer correctly argues that this sentence amounts to a jurisdictional statement, and does not set forth an affirmative claim for relief. Because Plaintiff has already asserted that jurisdiction is pursuant to 42 U.S.C § 1983 in his original Complaint (Compl. at 3), Plaintiff's proposed Claim One is superfluous and therefore does not warrant granting leave to amend.

C.      *Proposed Claims Two through Six*

Plaintiff's proposed Claims Two through Six all allege Section 1983 claims arising under either the Fourteenth or the Eighth Amendment for some form of "cruel and unusual punishment," "due process" violation, "deliberate indifference to serious medical needs," or "punishment [of a] pretrial detainee[]." (Am. Compl. at 14-15.) As noted above, a pretrial detainees right to custodial medical care is protected under the Fourteenth Amendment's Due Process clause rather than the Eighth Amendment. *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1315 (10th Cir. 2002). In an ostensible attempt to "cover his bases," Plaintiff's proposed Claims Two through Six make minor alterations to the legal bases underlying his original Fourteenth Amendment claim for deliberate indifference to his serious medical needs. (*Compare* Compl. at 12-13 *with* Am. Compl. at 14-15.) To the extent that Plaintiff might be seeking to allege claims with legal bases unique from his original Fourteenth Amendment Claim, his allegations are too conclusory to state a proper claim for relief. *Iqbal*, 129 S. Ct. at 1940 ("Threadbare recitals of the elements of a cause of action" are insufficient to state a claim for relief).

Plaintiff does add a single additional factual allegation in support of his original Fourteenth Amendment claim. Specifically, Plaintiff's alleges that "the purpose of the 10 month

delay was due to budgetary considerations . . . .  The defendants did not want to pay the tens of thousands of dollars for the Plaintiff's cornea surgery, knowing that the plaintiff would not be in their facility but temporarily."  (Am. Compl. at 12.)  However, Plaintiff does not support this additional allegation of the purported motive for delaying Plaintiff's cornea surgery with any facts.  In any event, the court finds that this single allegation does not render his Fourteenth Amendment claim viable.  Accordingly, because the court finds that Plaintiff's proposed Claims Two through Six are redundant of his original Fourteenth Amendment claim and his sole additional allegation does not render his claim plausible, Plaintiff's proposed Claims Two through Six should be rejected for the reasons outlined above.

### D.      Proposed Claim Seven, Nine, Eleven, and Twelve

Plaintiff's proposed Claim Seven alleges a violation of his equal protection rights.  (Am. Compl. at 16.)  Plaintiff's proposed Claims Nine and Eleven allege that Defendant Meyer, Drs. Fish and Cohen, and Sheriff Robinson conspired against Plaintiff, in violation of his rights under Section 1983 and 42 U.S.C. § 1985(3), respectively.  (*Id.* at 16, 20.)  Finally, Plaintiff's proposed Claim Twelve alleges that "all the defendants" had "knowledge of the wrongs conspired to be done against the plaintiff, or about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglected or refused to do so," in violation of 42 U.S.C. § 1986.  (*Id.* at 20.)  The court finds that each of these proposed claims are conclusory and therefore fail to state a valid claim for relief.

As to Claim Seven, Plaintiff fails to identify any similarly situated pretrial detainees or allege any facts as to how he was treated differently those individuals.  *See Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1988) ("In order to assert a viable equal protection claim,

plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."); *see Brown v. Zavaras,* 63 F.3d 967, 972 (10th Cir. 1995) ("even *pro se* litigants must do more than make mere conclusory statements regarding constitutional claims.")  Similarly, as to Claims Nine and Eleven, Plaintiff has failed to set forth any facts showing an agreement and concerted action between Defendant Meyer, Drs. Cohen and Fish, and Sheriff Robinson. *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998) (To state a Section 1983 conspiracy claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.") (citation omitted); *Merritt v. Hawk,* 153 F.Supp.2d 1216, 1225 (D.Colo.2001) ("[C]onclusory allegations that defendants acted 'in concert' or 'conspired' without specific allegations to support such  assertions are insufficient" to state a Section 1985(3) claim.) (citation omitted).

Finally, because Plaintiff has failed to sufficiently allege a Section 1985 conspiracy claim, his Section 1986 claim must fail as well.  *Santistevan v. Loveridge*, 732 F.2d 116 (10th Cir. 1984) (A Section 1986 claim is, by the statute's terms, derivative of a Section 1985 conspiracy and therefore must be dismissed in the absence of a viable Section 1985 claim). Accordingly, the court finds that Plaintiff's Motion to Amend is properly denied as to proposed Claims Seven, Nine, Eleven, and Twelve.

### E.    *Proposed Claim Eight*

Plaintiff's proposed Claim Eight seeks damages pursuant to Section 1983 against Defendant Meyer, Drs. Cohen and Fish, and Sheriff Robinson for failing to intervene while "knowing that a fellow colleague is violating the plaintiff's constitutional rights."  (Am. Compl. at 16.)  This claim is not cognizable.  More specifically, a failure to intervene may give rise to

liability under Section 1983 only where a plaintiff's allegations involve a use of excessive force. *See, e.g., Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir. 1996); *see also Lynch v. Barrett,* 09-cv-00405-JLK-MEH, 2010 WL 3938357 (June 9, 2010) ("The failure to intervene theory is clearly derivative of an excessive force claim; if a plaintiff did not suffer excessive force, there can be no failure to intervene claim.  The Tenth Circuit appears to denominate a failure to intervene theory as a variety of a 1983 excessive force claim.") (internal citations omitted).  In other words, Section 1983 liability for a state actor's failure to intervene has not been extended beyond cases involving excessive force. Here, Plaintiff plainly does not allege that he was the target of excessive force; consequently, his proposed Eighth Claim is futile.  Accordingly, the court finds that Plaintiff's Motion to Amend is properly denied as to proposed Claim Eight.

### F.    *Proposed Claim Ten*

Similar to Plaintiff's claim against Defendant Meyer in her official capacity, Plaintiff's proposed Claim Ten alleges a Section 1983 municipal liability claim against Arapahoe County and the Arapahoe County Sheriff's Department.  More specifically, Plaintiff alleges it was the "policy, practice or custom" of Arapahoe County and the Arapahoe County Sheriff's Department to "inadequately supervise and train its medical staff . . . in the proper handling, procedure and treatment of inmates with keratoconus," to "allow medical personal [sic] to deny or delay inmates [sic] treatment for serious medical needs related to budgetary considerations," and to "allow medical personal [sic] to deny or delay inmates [sic] treatment for serious medical needs if they believe that the inmates [sic] medical needs is [sic] non-emergent."  (Am. Compl. at 17-18.)  Relatedly, Plaintiff alleges that Defendant Meyers and former defendant Cohen were

23

officials with final decision-making authority, and therefore their decision to deny or delay his medical care amounted to the policies practices, or customs of Arapahoe County and/or the Arapahoe County Sheriff's Department.  (*Id.* at 18.)

As noted above, the fact that Plaintiff has failed to show that Defendant Meyer violated Plaintiff's constitutional rights prohibits a finding that Arapahoe County or the Arapahoe County Sheriff's Department are liable for her actions.  *Jiron,* 392 F.3d at 419; *Olsen,* 312 F.3d at 1317–18.  Otherwise Plaintiff's proposed Claim Ten merely recites the required elements for the various forms of municipal liability and fails to identify any particular policy or custom of Arapahoe County or the Arapahoe County Sheriff's Department that was the moving force behind the alleged violation of Plaintiff's constitutional rights.  *Martin v. Dist. of Columbia,* 720 F.Supp.2d 19, 23 (D.D.C. 2010) (granting city's  motion to dismiss Section 1983 municipal liability claim when allegations did "nothing more than recite the required causal elements of custom or policy liability based on deliberate indifference" and plaintiff's "conclusory statements" were "unsupported by additional factual allegations").

Similarly, Plaintiff has failed to allege any facts that Defendant Meyer or Dr. Cohen were officials with final policymaking authority as required to assign liability for their decisions to either Arapahoe County or the Arapahoe County Sheriff's Department.  *Id.*; *see also Myers v. Koopman,* 09-cv-02802-REB-MEH, 2011 WL 2445863, at *3 (D. Colo. June 17, 2011) (unpublished decision) (granting motion to dismiss muncipal liability claims where the plaintiff failed to allege facts to support the contention that a city detective possessed final policymaking authority).  Accordingly, the court finds that Plaintiff's proposed Claim Ten fails to state a claim for relief, and is therefore futile.  Therefore, Plaintiff's Motion to Amend is properly denied as to

24

proposed Claim Ten.

> **G.** **Proposed Claim Thirteen and Fourteen**

Plaintiff's proposed Claim Thirteen and Fourteen allege violations of the ADA and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, respectively.  Plaintiff's proposed ADA claim is duplicative of the ADA claim contained in his original complaint; he does not set forth any additional allegations that might permit that claim to survive.  Relatedly, as with ADA claims, Rehabilitation Act claims may not be premised on alleged substandard medical care. *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1143 (10th Cir. 2005).  Therefore, Plaintiff's proposed Rehabilitation Act claim is no more viable than his ADA claim.  Consequently, the court finds that both Plaintiff's proposed Claim Thirteen and Fourteen are futile and that Plaintiff's Motion to Amend is properly denied as to these claims.

## III.   *REMAINING STATE LAW CLAIMS*

As noted above, in her Motion to Dismiss, Defendant Meyer argues that the court should dismiss Plaintiff's state law claims for lack of jurisdiction.  The court has now found that Plaintiff's existing federal law claims are properly dismissed and that all of Plaintiff's proposed federal law claims are futile.  Accordingly, only Plaintiff's existing and proposed state law claims remain.  The court finds it proper to decline to exercise jurisdiction over both Plaintiff's existing and proposed state law claims.  *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.")  Accordingly, the court finds that Plaintiff's existing state law claims are properly dismissed for lack of jurisdiction and Plaintiff's Motion to Amend is properly denied to the extent it seeks to

assert additional state law claims.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendant Meyer's Motion to Dismiss" (Doc. No. 34) be

GRANTED, that Plaintiff's "Motion for Leave to File an Amended Complaint" (Doc. No. 37) be

DENIED, and that this action be dismissed in its entirety.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

26

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of December, 2011.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge